# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit:

REPORTER'S TRANSCRIPTS PAGES: 789-805

Number of pages to this Exhibit: __16__ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

789

1    SAN DIEGO, CALIFORNIA - THURSDAY, JUNE 19, 1997 - 1:55 P.M.

2                        :: :: ::

3         THE COURT:  WE ARE ON THE RECORD OUTSIDE THE

4    PRESENCE OF THE JURY.  BECAUSE WE'RE ACTUALLY ON THE

5    RECORD IN THE FIRST TRIAL RIGHT AT THE MOMENT.  BOTH

6    COUNSEL AND MR. KENDRICK ARE PRESENT.  APPARENTLY JUST

7    ABOUT NOON THE JURY ADVISED THEY HAD A VERDICT.  WE HAVE

8    NO IDEA, SO PERHAPS MR. KENDRICK KNOWS WHAT THAT VERDICT

9    IS.  I AM TRYING TO BE OVERLY-SENSITIVE TO THE FACT I

10   HAVE ONE JURY OUT THERE WAITING.  I HAVE ANOTHER JURY

11   IN THE JURY ROOM AND I HAVE TO TIMEWISE COORDINATE THE

12   TWO, AND IN AN EFFORT THEY NOT SEE EACH OTHER.  SO I

13   AM GOING TO REQUIRE JUST TO MAKE SURE THAT IT IS STILL

14   MR. KENDRICK'S INTENT THAT IF ANY OF THE VERDICTS ARE

15   GUILTY HE INTENDS TO GO FORWARD WITH A JURY TRIAL WITH

16   THIS JURY.  IS THAT STILL YOUR INTENTION, MR. KENDRICK?

17        MR. BERMAN:  YOUR HONOR, I'VE HAD FURTHER DISCUSSION

18   WITH MR. KENDRICK AND I BELIEVE WE WILL WAIVE JURY FOR

19   THE BIFURCATED TRIAL.

20        THE COURT:  MR. KENDRICK, AS WE PREVIOUSLY

21   DISCUSSED, YOU HAVE THE ABSOLUTE RIGHT TO A JURY TRIAL,

22   AND IF THERE IS A VERDICT OF GUILTY ON THE TWO ENHANCEMENTS

23   THAT DEAL WITH THE PRIORS, AND THE FIRST STRIKE PRIOR,

24   WHICH IS A DOUBLING ENHANCEMENT, THE JURY THAT WOULD

25   TRY THAT WOULD BE THE SAME JURY.  DO YOU UNDERSTAND ALL

26   OF THAT I JUST SAID?

27        THE DEFENDANT:  I DO.

28        THE COURT:  YOUR ATTORNEY SAID YOU WOULD WAIVE

790

1    YOUR RIGHT TO A JURY TRIAL.  THE FIRST CHOICE WOULD BE

2    A COURT TRIAL AND THE SECOND WOULD BE AN ADMISSION.  IF

3    IT'S A COURT TRIAL YOU RETAIN ALL OF YOUR RIGHTS AS A

4    DEFENDANT IN THE ORIGINAL TRIAL, YOUR PRIVILEGE AGAINST

5    SELF-INCRIMINATION, THE RIGHT TO REMAIN SILENT, THE RIGHT

6    TO SUBPOENA WITNESSES ON YOUR OWN BEHALF.  IF YOU ADMIT

7    THEM YOU WOULD NOT BE EXERCISING YOUR RIGHT TO BRING

8    SUBPOENAED WITNESSES IN BECAUSE THERE WOULD BE NO WITNESSES,

9    AND YOU WOULD BE WAIVING YOUR RIGHT AGAINST SELF-INCRIMI-

10   NATION AND THE RIGHT TO REMAIN SILENT.  YOU WOULD ONLY

11   BE WAIVING THE TRIAL AND THE COURT WOULD MAKE A DETERMI-

12   NATION WITH ALL OF YOUR RIGHTS AVAILABLE TO YOU AS ONE

13   OPTION OR WAIVING ALL RIGHTS IF YOU ADMIT.

14            HAVING ALL OF THAT IN MIND, ANY QUESTIONS ABOUT

15   THESE PROCEEDINGS?

16            THE DEFENDANT:  NO, JUST THE LAST TWO.

17            THE COURT:  IF YOU WAIVE JURY AND YOU HAVEN'T

18   ACTUALLY DONE THAT YET, ASSUMING YOU'RE GOING TO WAIVE

19   JURY, THEN THE ALLEGATIONS WILL EITHER BE TRIED BY THE

20   COURT AND YOU RETAIN YOUR RIGHT TO REMAIN SILENT AND

21   YOUR PRIVILEGE AGAINST SELF-INCRIMINATION.  YOU DON'T

22   HAVE TO SAY ANYTHING.  THE BURDEN IS STILL ON THE DISTRICT

23   ATTORNEY TO PUT ON THE CASE, BUT I WILL MAKE THE DETERMINATION.

24            THE DEFENDANT:  I UNDERSTAND.

25            THE COURT:  THE OTHER OPTION IS YOU WOULD WAIVE

26   YOUR RIGHTS AND ADMIT THE ALLEGATIONS.  SO THOSE ARE

27   TWO OPTIONS.  ANY OTHER QUESTIONS ABOUT THESE OPTIONS?

28            THE DEFENDANT:  NO, I DON'T.

1          THE COURT:  HAVE YOU HAD ENOUGH TIME TO TALK

2   TO MR. BERMAN?

3          THE DEFENDANT:  YES, I HAVE.

4          THE COURT:  HOW DO YOU WANT TO PROCEED, DO

5   YOU WANT TO WAIVE THE JURY?

6          THE DEFENDANT:  YES, I DO.

7          THE COURT:  I WILL ACCEPT THAT THEN AS A KNOWING

8   WAIVER OF JURY, AND WE WILL MOVE INTO THE OTHER TWO OPTIONS.

9   WHICH WAY DO YOU WANT TO PROCEED, BY A COURT TRIAL OR

10  ADMISSION?

11         THE DEFENDANT:  BY COURT TRIAL.

12         THE COURT:  YOU UNDERSTAND HAVING WAIVED THE

13  JURY WHAT HAPPENS THE VERDICT IS READ AND THE JURY WOULD

14  BE RELEASED AS FAR AS YOUR FIRST CASE IS CONCERNED.

15         THE DEFENDANT:  YES, MA'AM.

16         THE COURT:  ALL WE WILL DO IS TAKE THEM OUT.

17  ACTUALLY, WE WILL GO BACK AND GET THEIR THINGS AND HAVE

18  THEM LEAVE THEIR THINGS IN THE JURY ROOM FOR NOW.  THEN

19  THEY'LL GO BACK AND BRING THEIR THINGS OUT OF THE JURY

20  ROOM.  SINCE WE HAVE TWO BAILIFFS --

21         THE BAILIFF:  WHEN WILL WE BE DOING THE COURT

22  TRIAL?

23         THE COURT:  LET'S DECIDE THAT.  I CAN GO AHEAD

24  AND DO THE COURT TRIAL RIGHT NOW.  IT SEEMS TO ME TO

25  MAKE MORE SENSE TO WAIT UNTIL THE SECOND CASE IS OVER

26  UNLESS THERE'S A GUILTY VERDICT IN THE SECOND CASE.  IF

27  THERE IS NO GUILTY VERDICT ON THE SECOND CASE I WOULD

28  AS SOON PUT IT OFF UNTIL THAT IS BEHIND US.  ANY OBJECTION?

792

1          MS. GIANERA:  NO OBJECTION TO THAT, YOUR HONOR,

2  REGARDING THE COURT TRIAL ON THE PRIORS.

3          THE COURT:  THE OBJECTION ON WAITING UNTIL

4  THE CONCLUSION OF THIS TRIAL?

5          MR. BERMAN:  NO, YOUR HONOR.

6          THE COURT:  ANY OBJECTION ON YOUR PART, MR.

7  KENDRICK?

8          THE DEFENDANT:  NO, MA'AM.

9          THE COURT:  LET'S BE SURE THE RECORD IS CLEAR,

10  MR. BERMAN.  YOU JOIN IN THAT WAIVER OF JURY TRIAL ON

11  THE PRIORS IF THERE IS A GUILTY VERDICT ON THE FIRST

12  CASE?

13          MR. BERMAN:  YES, YOUR HONOR.

14          THE COURT:  OKAY, ARE WE READY FOR THE JURY?

15          MS. GIANERA:  YES, YOUR HONOR.

16          MR. BERMAN:  YES.

17          THE COURT:  11 IS THE FOREPERSON.

18          (OPEN COURT.)

19          THE COURT:  ON THE RECORD IN THE MATTER OF

20  PEOPLE OF THE STATE OF CALIFORNIA VS. JOHN KENDRICK, II.

21          THE RECORD WILL REFLECT THE JURY IS ALL PRESENT,

22  INCLUDING THE ALTERNATE.  BOTH COUNSEL AND MR. KENDRICK

23  ARE PRESENT.  WHO IS THE FOREPERSON, PLEASE?

24          JUROR NO. 11:  I AM.

25          THE COURT:  FOR THE RECORD, JUROR NO. 11 IS

26  THE FOREPERSON.  HAS THE JURY REACHED A VERDICT?

27          JUROR NO. 11:  YES, WE HAVE.

28          THE COURT:  WOULD YOU PLEASE HAND THE VERDICT

1    FORMS TO THE BAILIFF.

2              WOULD THE CLERK PLEASE READ THE VERDICTS.

3              THE CLERK:  SUPERIOR COURT OF THE STATE OF

4    CALIFORNIA FOR THE COUNTY OF SAN DIEGO.  DEPARTMENT 5,

5    CASE NO. SCD-123570, D.A. NO. P-84768.

6              THE PEOPLE OF THE STATE OF CALIFORNIA VS. JOHN

7    KENDRICK, II.

8              WE THE JURY IN THE ABOVE-ENTITLED CAUSE, FIND

9    THE DEFENDANT, JOHN KENDRICK, II, GUILTY OF THE CRIME

10   OF ROBBERY IN VIOLATION OF PENAL CODE SECTION 211 AS

11   CHARGED IN COUNT ONE OF THE INFORMATION, VICTIM:  ARMANDO

12   MANCILLA.

13             AND, WE FURTHER FIND THAT THE DEFENDANT WAS

14   PERSONALLY ARMED WITH A FIREARM, TO WIT:  A HANDGUN,

15   WITHIN THE MEANING OF PENAL CODE SECTION 12022.5(A)(1).

16             DATED 6/19/97, SIGNED BY JUROR FOREPERSON NO. 11.

17             NEXT VERDICT, SAME CASE AND CAPTION.

18             WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, FIND

19   THE DEFENDANT, JOHN KENDRICK, II, GUILTY OF THE CRIME

20   OF FALSE IMPRISONMENT BY VIOLENCE IN VIOLATION OF PENAL

21   CODE SECTION 236/237 AS CHARGED IN COUNT TWO OF THE INFOR-

22   MATION.  VICTIM:  ARMANDO MANCILLA.

23             AND, WE FURTHER FIND THAT THE DEFENDANT WAS

24   PERSONALLY ARMED WITH A FIREARM, TO WIT:  A HANDGUN,

25   WITHIN THE MEANING OF PENAL CODE SECTION 12022.5(A)(1).

26             DATED 6/19/97, SIGNED BY JUROR FOREPERSON NO. 11.

27             NEXT VERDICT, SAME CASE AND CAPTION.

28             WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, FIND

794

1   THE DEFENDANT, JOHN KENDRICK, II, GUILTY OF THE CRIME

2   OF ROBBERY IN VIOLATION OF PENAL CODE SECTION 211 AS

3   CHARGED IN COUNT THREE OF THE INFORMATION.   VICTIM:   PRAVIN

4   PATEL.

5               AND, WE FURTHER FIND THAT THE DEFENDANT WAS

6   PERSONALLY ARMED WITH A FIREARM, TO WIT:   A HANDGUN,

7   WITHIN THE MEANING OF PENAL CODE SECTION 12022.5(A)(1).

8               DATED 6/19/97, SIGNED BY JUROR FOREPERSON NO. 11.

9               NEXT VERDICT, SAME CASE AND CAPTION.

10              WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, FIND

11  THE DEFENDANT, JOHN KENDRICK, II, GUILTY OF THE CRIME

12  OF FALSE IMPRISONMENT BY VIOLENCE IN VIOLATION OF PENAL

13  COD4E SECTION 236/237 AS CHARGED IN COUNT FOUR OF THE

14  INFORMATION.   VICTIM:   MAYRA ROMERO.

15              AND, WE FURTHER FIND THAT THE DEFENDANT WAS

16  PERSONALLY ARMED WITH A FIREARM, TO WIT:   A HANDGUN,

17  WITHIN THE MEANING OF PENAL CODE SECTION 12022.5(A)(1).

18              DATED 6/19/97, SIGNED BY JUROR FOREPERSON NO. 11.

19              NEXT VERDICT, SAME CASE AND CAPTION.

20              WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, FIND

21  THE DEFENDANT, JOHN KENDRICK, II, GUILTY OF THE CRIME

22  OF ROBBERY IN VIOLATION OF PENAL CODE SECTION 211 AS

23  CHARGED IN COUNT FIVE OF THE INFORMATION.   VICTIM: VICENTA

24  PUGEDA.

25              AND, WE FURTHER FIND THAT THE DEFENDANT WAS

26  PERSONALLY ARMED WITH A FIREARM, TO WIT:   A HANDGUN,

27  WITHIN THE MEANING OF PENAL CODE SECTION 12022.5(A)(1).

28              DATED 6/19/97, SIGNED BY JUROR FOREPERSON NO. 11.

1       NEXT VERDICT, SAME CASE, SAME CAPTION.

2       WE, THE JURY IN THE ABOVE-ENTITLED CAUSE, FIND

3   THE DEFENDANT, JOHN KENDRICK, II, GUILTY OF THE CRIME

4   OF FALSE IMPRISONMENT BY VIOLENCE IN VIOLATION OF PENAL

5   CODE SECTION 236/237 AS CHARGED IN COUNT SIX OF THE INFOR-

6   MATION.  VICTIM:  VICENTA PUGEDA.

7       AND, WE FURTHER FIND THAT THE DEFENDANT WAS

8   PERSONALLY ARMED WITH A FIREARM, TO WIT:  A HANDGUN,

9   WITHIN THE MEANING OF PENAL CODE SECTION 12022.5(A)(1).

10      DATED 6/19/97, SIGNED BY JUROR FOREPERSON NO. 11.

11      LADIES AND GENTLEMEN OF THE JURY, ARE THOSE

12  YOUR VERDICTS AS READ?

13      THE  JURY UNANIMOUSLY:  YES.

14      THE COURT:  EITHER COUNSEL WISH THE JURY FURTHER

15  POLLED?

16      MR. BERMAN:  YES, YOUR HONOR.

17      THE CLERK:  LADIES AND GENTLEMEN, AS I CALL

18  YOUR SEAT NUMBER, WILL YOU PLEASE ANSWER YES IF THE VERDICTS

19  AS READ WERE YOUR VERDICTS AND NO IF THE VERDICTS AS

20  READ WERE NOT YOUR VERDICTS.

21      COUNT 1, JUROR NO. 1.

22      JUROR NO. 1:  YES.

23      THE CLERK:  JUROR NO. 2?

24      JUROR NO. 2:  YES.

25      THE CLERK:  JUROR NO. 3?

26      JUROR NO. 3:  YES.

27      THE CLERK:  JUROR NO. 4?

28      JUROR NO. 4:  YES.

796

```
1              THE CLERK:  JUROR NO. 5?

2         JUROR NO. 5:  YES.

3              THE CLERK:  JUROR NO. 6?

4         JUROR NO. 6:  YES.

5              THE CLERK:  JUROR NO. 7?

6         JUROR NO. 7:  YES.

7              THE CLERK:  JUROR NO. 8?

8         JUROR NO. 8:  YES.

9              THE CLERK:  JUROR NO. 9?

10        JUROR NO. 9:  YES.

11             THE CLERK:  JUROR NO. 10?

12        JUROR NO. 10:  YES.

13             THE CLERK:  JUROR NO. 11?

14        JUROR NO. 11:  YES.

15             THE CLERK:  JUROR NO. 12?

16        JUROR NO. 12:  YES.

17        THE CLERK:  COUNT 2, JUROR NO. 1?

18        JUROR NO. 1:  YES.

19             THE CLERK:  JUROR NO. 2?

20        JUROR NO. 2:  YES.

21             THE CLERK:  JUROR NO. 3?

22        JUROR NO. 3:  YES.

23             THE CLERK:  JUROR NO. 4?

24        JUROR NO. 4:  YES.

25             THE CLERK:  JUROR NO. 5?

26        JUROR NO. 5:  YES.

27             THE CLERK:  JUROR NO. 6?

28        JUROR NO. 6:  YES.
```

1      THE CLERK:  JUROR NO. 7?

2      JUROR NO. 7:  YES.

3      THE CLERK:  JUROR NO. 8?

4      JUROR NO. 8:  YES.

5      THE CLERK:  JUROR NO. 9?

6      JUROR NO. 9:  YES.

7      THE CLERK:  JUROR NO. 10?

8      JUROR NO. 10:  YES.

9      THE CLERK:  JUROR NO. 11?

10     JUROR NO. 11:  YES.

11     THE CLERK:  JUROR NO. 12?

12     JUROR NO. 12:  YES.

13     THE CLERK:  COUNT 3, JUROR NO. 1?

14     JUROR NO. 1:  YES.

15     THE CLERK:  JUROR NO. 2?

16     JUROR NO. 2:  YES.

17     THE CLERK:  JUROR NO. 3?

18     JUROR NO. 3:  YES.

19     THE CLERK:  JUROR NO. 4?

20     JUROR NO. 4:  YES.

21     THE CLERK:  JUROR NO. 5?

22     JUROR NO. 5:  YES.

23     THE CLERK:  JUROR NO. 6?

24     JUROR NO. 6:  YES.

25     THE CLERK:  JUROR NO. 7?

26     JUROR NO. 7:  YES.

27     THE CLERK:  JUROR NO. 8?

28     JUROR NO. 8:  YES.

798.

```
 1              THE CLERK:  JUROR NO. 9?

 2         JUROR NO. 9:  YES.

 3              THE CLERK:  JUROR NO. 10?

 4         JUROR NO. 10:  YES.

 5              THE CLERK:  JUROR NO. 11?

 6         JUROR NO. 11:  YES.

 7              THE CLERK:  JUROR NO. 12?

 8         JUROR NO. 12:  YES.

 9              THE CLERK:  COUNT 4, JUROR NO. 1?

10         JUROR NO. 1:  YES.

11              THE CLERK:  JUROR NO. 2?

12         JUROR NO. 2:  YES.

13              THE CLERK:  JUROR NO. 3?

14         JUROR NO. 3:  YES.

15              THE CLERK:  JUROR NO. 4?

16         JUROR NO. 4:  YES.

17              THE CLERK:  JUROR NO. 5?

18         JUROR NO. 5:  YES.

19              THE CLERK:  JUROR NO. 6?

20         JUROR NO. 6:  YES.

21              THE CLERK:  JUROR NO. 7?

22         JUROR NO. 7:  YES.

23              THE CLERK:  JUROR NO. 8?

24         JUROR NO. 8:  YES.

25              THE CLERK:  JUROR NO. 9?

26         JUROR NO. 9:  YES.

27              THE CLERK:  JUROR NO. 10?

28         JUROR NO. 10:  YES.
```

1          THE CLERK:  JUROR NO. 11?

2          JUROR NO. 11:  YES.

3          THE CLERK:  JUROR NO. 12?

4          JUROR NO. 12:  YES.

5          THE CLERK:  COUNT 5, JUROR NO. 1?

6          JUROR NO. 1:  YES.

7          THE CLERK:  JUROR NO. 2?

8          JUROR NO. 2:  YES.

9          THE CLERK:  JUROR NO. 3?

10          JUROR NO. 3:  YES.

11          THE CLERK:  JUROR NO. 4?

12          JUROR NO. 4:  YES.

13          THE CLERK:  JUROR NO. 5?

14          JUROR NO. 5:  YES.

15          THE CLERK:  JUROR NO. 6?

16          JUROR NO. 6:  YES.

17          THE CLERK:  JUROR NO. 7?

18          JUROR NO. 7:  YES.

19          THE CLERK:  JUROR NO. 8?

20          JUROR NO. 8:  YES.

21          THE CLERK:  JUROR NO. 9?

22          JUROR NO. 9:  YES.

23          THE CLERK:  JUROR NO. 10?

24          JUROR NO. 10:  YES.

25          THE CLERK:  JUROR NO. 11?

26          JUROR NO. 11:  YES.

27          THE CLERK:  JUROR NO. 12?

28          JUROR NO. 12:  YES.

1      THE CLERK:  COUNT 6, JUROR NO. 1?

2      JUROR NO. 1:  YES.

3      THE CLERK:  JUROR NO. 2?

4      JUROR NO. 2:  YES.

5      THE CLERK:  JUROR NO. 3?

6      JUROR NO. 3:  YES.

7      THE CLERK:  JUROR NO. 4?

8      JUROR NO. 4:  YES.

9      THE CLERK:  JUROR NO. 5?

10     JUROR NO. 5:  YES.

11     THE CLERK:  JUROR NO. 6?

12     JUROR NO. 6:  YES.

13     THE CLERK:  JUROR NO. 7?

14     JUROR NO. 7:  YES.

15     THE CLERK:  JUROR NO. 8?

16     JUROR NO. 8:  YES.

17     THE CLERK:  JUROR NO. 9?

18     JUROR NO. 9:  YES.

19     THE CLERK:  JUROR NO. 10?

20     JUROR NO. 10:  YES.

21     THE CLERK:  JUROR NO. 11?

22     JUROR NO. 11:  YES.

23     THE CLERK:  JUROR NO. 12?

24     JUROR NO. 12:  YES.

25     THE COURT:  THE COURT AS RECORDED 12 AFFIRMATIVE

26  VOTES AS TO YOUR RESPONSES AS TO COUNTS 1, 2, 3, 4, 5 AND 6.

27     WILL THE CLERK PLEASE RECORD THE VERDICTS.

28     THE CLERK:  SO RECORDED.

1    THE COURT:  COUNSEL WAIVE THE READING OF THE

2    RECORDED VERDICTS?

3    MS. GIANERA:  YES, YOUR HONOR.

4    MR. BERMAN:  YES, YOUR HONOR.

5    THE COURT:  LADIES AND GENTLEMEN, AT THIS TIME

6    YOUR JOB AS A JUROR HAS CONCLUDED, AND ON BEHALF OF MYSELF

7    AND MY STAFF AND BOTH COUNSEL AND MR. KENDRICK, I WANT

8    TO THANK YOU FOR YOUR PARTICIPATING AS A JUROR.

9    HAVING NOW GONE THROUGH THE WHOLE PROCESS FROM

10   BEGINNING TO END, YOU CAN BETTER UNDERSTAND, AND HOPEFULLY

11   APPRECIATE, THE COMMENTS I MADE DURING VOIR DIRE ABOUT

12   THE IMPORTANCE OF PEOPLE SUCH AS YOURSELVES BEING WILLING

13   TO SERVE AS JURORS.  AND FOR THAT WE SINCERELY THANK

14   YOU.

15   AT THIS TIME THE ADMONITION YOU HAVE BEEN UNDER

16   IS NO LONGER IN FORCE AND EFFECT.  THAT MEANS AT ANY

17   TIME FROM NOW ON YOU DO HAVE THE RIGHT TO DISCUSS ANY

18   ASPECT OF THIS CASE WITH ANYONE, AND THAT INCLUDES EITHER

19   COUNSEL OR THEIR REPRESENTATIVES OR THE DEFENDANT AND

20   HIS LEGAL REPRESENTATIVE OR ANYONE ELSE.  THE RULES ARE

21   AS FOLLOWS:

22   FIRST OF ALL, IT IS YOUR CHOICE WHETHER YOU

23   SPEAK OR NOT.  SECONDLY, IT MUST BE AT A REASONABLE TIME

24   AND AT A REASONABLE PLACE.  IF ANYONE WERE TO CONTACT

25   YOU AND NOT MEET THAT CRITERIA, TRY TO FORCE YOU TO SPEAK

26   WHEN YOU DON'T WANT TO OR WEREN'T BEING REASONABLE ABOUT

27   THE TIME AND PLACE, IT REMAINS YOUR OBLIGATION TO IMMEDIATELY

28   ADVISE THE COURT OF THAT CIRCUMSTANCE OF WHAT IS HAPPENING.

1          I DO WANT TO CAUTION YOU, IF YOU CHOOSE TO

2     SPEAK TO SOMEONE BEFORE YOU DO SO -- SOMETIMES JURY DISCUSSIONS

3     GET A LITTLE HEATED -- FEEL FREE TO DISCUSS IT FROM YOUR

4     PERSPECTIVE.   ALSO, UNDERSTAND ANYTHING YOU DO SAY MAY

5     HAVE TO BE PUT UNDER OATH AT A LATER TIME IF IT WERE BROUGHT

6     TO THE ATTENTION OF THE COURT.

7          ALSO, YOU HEARD THE COURT REFER TO THE ISSUE

8     OF JURY PRIVACY.   AT THIS TIME YOUR RECORDS WITH RESPECT

9     TO YOUR IDENTIFYING INFORMATION, YOUR NAME, ADDRESS AND

10    PHONE NUMBER, IS SEALED AND CANNOT BE RELEASED WITHOUT

11    A HEARING BEFORE THE COURT.

12         IF SUCH A MOTION WERE BROUGHT, THE COURT WOULD

13    CONTACT YOU TO GET IN TOUCH WITH YOU ON THAT PROCEDURE

14    IN DECIDING THAT ISSUE.

15         AGAIN, I WANT TO THANK YOU FOR YOUR SERVICE.

16    YOU DO HAVE TO REPORT BACK TO THE JURY COMMISSIONER.

17    I CANNOT RELEASE YOU DIRECTLY FROM THIS DEPARTMENT.

18         I GUESS THAT'S ALL.   ACTUALLY, COUNSEL WILL

19    BE TIED UP WITH ME FOR A LITTLE WHILE, SO THEY WON'T

20    BE AVAILABLE TO TALK WITH YOU.   SOMETIMES THEY ARE, BUT

21    IN THIS PARTICULAR SITUATION THEY ARE NOT.   BUT THEY

22    MAY BE IN THE FUTURE.   HAVE A GOOD DAY.

23         AS TO THE ALTERNATE, THANK YOU VERY MUCH FOR

24    YOUR PATIENCE.   IT'S ALWAYS A VERY DIFFICULT POSITION.

25         (JURY EXCUSED.)

26         MR. BERMAN:   COULD I SUGGEST WE PERHAPS HAVE

27    AN INFORMAL DISCUSSION OFF THE RECORD NOW TO SEE WHERE

28    WE WANT TO GO FROM HERE?

803

1    THE COURT:  WHY DON'T I ALLOW YOU TO INFORMALLY

2    DISCUSS THE MATTER WITH THE D.A. AND IF YOU NEED TO SEE

3    ME IN CHAMBERS, THAT'S FINE.  BUT YOU MAY WANT TO HAVE

4    THAT DISCUSSION WITH MR. KENDRICK PRESENT BEFORE YOU

5    COME BACK INTO CHAMBERS.  SO EITHER WAY IS ACCEPTABLE.

6    MS. GIANERA:  SURE.  I'LL LISTEN IF HE WANTS

7    TO CHANGE HIS PLEA, BUT IT'S A MANDATORY, CONSECUTIVE

8    FOUR-YEAR, EIGHT MONTHS WITH THE GUILTY ON THIS AND I

9    DON'T INTEND TO OFFER LESS.

10    THE COURT:  YOU HEARD THE POSITION OF THE D.A.

11    SO YOU CAN GO AHEAD AND DISCUSS THAT.  THAT WOULD BE

12    THE --

13    MS. GIANERA:  THIS WOULD BE ONE-THIRD THE MID.

14    THE COURT:  WHICH IS THREE DOUBLED PLUS FOUR.

15    SO THAT'S HOW THAT'S ARRIVED AT, TAKING THE MID TERM.

16    AS I INDICATED TO YOU THE OTHER DAY, SIR, THE MID IS

17    THREE YEARS.  IT'S A 2/3/4.  FIRST OF ALL, THAT WOULD

18    BE DOUBLED BECAUSE OF THE STRIKE.  THIS IS ASSUMING A

19    GUILTY VERDICT AND THE ALLEGATIONS ARE PROVEN.  SO IT'S

20    THREE YEARS DOUBLED FOR SIX AND THEN THE MID TERM ON

21    THAT IS FOUR.  SO THAT'S 10 YEARS.  BECAUSE IT COULD

22    BE CONSECUTIVE IT'S MANDATED IT WOULD BE CONSECUTIVE,

23    AND THAT IS A LID PUT ON THAT SO IT IS ONE-THIRD OF THAT,

24    BUT I DIDN'T DO THE MATH, BUT FOUR YEARS, EIGHT, EIGHT

25    MONTHS IS --

26    MS. GIANERA:  IT'S ONE-THIRD MID OF THE PRINCIPAL

27    TIME, WHICH WOULD BE SIX YEARS PLUS THE --

28    THE COURT:  ONE-THIRD.  THE BASIS IS -- THE

1    DOUBLING IS TWO YEARS, ONE-THIRD OF SIX IS TWO.  SO WE

2    HAVE THREE YEARS, FOUR MONTHS IS THE MINIMUM WITHOUT

3    THE COURT EXERCISING ANY KIND OF DISCRETIONS.  AND THAT

4    IS WHAT THE D.A. IS INDICATING IF THERE WERE TO BE A

5    PLEA.  ESSENTIALLY THERE WOULD BE NO DEALS ON THE TERM,

6    SO IT'S UP TO THE DISCRETION OF THE COURT.  BUT I WANT

7    YOU TO KNOW THAT IS THE MINIMUM AND THE MAXIMUM.

8            MS. GIANERA:  I DIDN'T THINK THERE WAS ANY

9    DISCRETION UNDER 667(C).

10           THE COURT:  I THINK THERE'S DISCRETION ON THE

11   ALLEGATIONS.

12           MS. GIANERA:  YOU CAN STRIKE THE STRIKE.  YOU

13   HAVE THE POWER.

14           THE COURT:  I CAN STRIKE THE STRIKE WHENEVER

15   WE HAVE ANY SIX-YEAR ISSUES, PROBABLY NOT, BUT THEY ARE

16   ALL SEPARATE EVENTS.  SO THOSE ARE ALL AREAS I'M NOT

17   PREPARED TO MAKE A FINAL DECISION ON BY ANY MEANS.

18   BUT THOSE ARE ALL DISCRETIONARY AREAS.

19           WHAT THE D.A. IS SAYING IS YOU HAVE TO PLEA

20   TO THE SHEET AND THIS IS WHAT YOU ARE EXPOSED TO AT A

21   MINIMUM, AND IT ACTUALLY BECOMES A MAXIMUM BECAUSE REGARDLESS

22   OF WHAT I MIGHT IMPOSE, THERE IS A LID.  SO IT'S A MINIMUM

23   AND A MAXIMUM AT THE SAME TIME.  SO DID YOU UNDERSTAND

24   THE DISCUSSION, MR. KENDRICK, AND DO YOU UNDERSTAND WHAT

25   THE D.A. IS SAYING AND WHAT THE COURT HAS SAID WITH RESPECT

26   TO WHAT IS YOUR EXPOSURE WITHOUT THE COURT EXERCISING

27   DISCRETION.

28           SENTENCING WOULD ALSO BE AT THE SAME TIME AND

805

1   'I'M NOT MAKING ANY PROMISES WHATSOEVER.  I'M JUST TELLING

2   YOU THOSE ARE THE PERAMETERS.  DO YOU HAVE ANY QUESTIONS

3   ABOUT THOSE PERAMETERS?

4          MR. BERMAN:  YOUR HONOR, I'M SURE MY CLIENT

5   HAS A NUMBER OF QUESTIONS WHICH I WOULD LIKE TO DISCUSS

6   WITH HIM.  I'LL EXPLAIN TO HIM WHAT THE COURT JUST EXPLAINED

7   AND THERE ARE OTHER CONSIDERATIONS, WE WILL NEED TO TALK

8   ABOUT ALSO.

9          THE COURT:  I'LL GIVE YOU AN OPPORTUNITY TO

10  TALK TO MR. BERMAN.  JUST SO IT'S CLEAR, IT IS 2:10.

11  THE JURY IS DUE BACK AT 2:15.  BUT WE ARE NOT GOING TO

12  RESPOND TO A SUBSTANTIAL AMOUNT OF TIME, BUT I DO WANT

13  YOUR QUESTIONS ANSWERED.

14         OKAY.

15         (RECESS.)

16         (AT 3:05 P.M. DEFENDANT PLED GUILTY TO COUNT 7,

17  REQUIRING NO FURTHER JURY TRIAL.)

18         (END TODAY'S PROCEEDINGS.)

19                    :: :: ::

20

21

22

23

24

25

26

27

28

# EXHIBIT COVER PAGE 

Description of this Exhibit:

PRELIMINARY REPORTER'S TRANSCRIPTS
PAGES: 43-48, 56, 61-71, 75 & 85

Number of pages to this Exhibit: __19__ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☒ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

1      A.    It should have just been a clear bag with, like, red

2  markings on it.

3      Q.    Okay.  What bank did you go to to make the deposit

4  at?

5      A.    Bank of America.

6      Q.    Was that the Bank of America at 414 North Magnolia

7  in El Cajon?

8      A.    Yes.

9      Q.    When you went to make that deposit, what

10  happened?

11      A.    As I was approaching the door, a gentleman jumped

12  out from behind a van that was parked there near the entrance

13  and approached me with a gun.

14      Q.    And what happened?

15      A.    Well, I got scared, and I threw the -- I had the bag

16  in my hand and my keys in my hand, and I threw them both on the

17  ground, and then just stepped back.

18      Q.    All right.  When you saw the man come out from

19  behind the van, you said you saw a gun.

20      A.    Uh-huh.

21      Q.    Can you describe that for us, what it looked like.

22      A.    I believe it was like a metallic black, not the

23  glossy black, but more like -- just a metallic black.

24      Q.    Okay.  Were there any other colors that you noticed

25  on the gun?

26      A.    No.

27      Q.    And how was -- can you describe this individual that

28  came out from behind the van.

1      A.    The most I can tell you is that it was a young black

2    man.  But I mean, I was nervous, and so I averted my eyes to the

3    ground.

4      Q.    Were you able to see any of his clothing before you

5    averted your eyes?

6      A.    I believe that he was wearing a red or a plaid

7    red -- I don't know what it was.  It was just colored red --

8    checkered red.

9      Q.    And when you say he was wearing that, what part of

10   his body was wearing that?

11     A.    The top.

12     Q.    A shirt?

13     A.    I don't know if it was, like, a shirt or a pullover

14   or what.  Just the top half.

15     Q.    And was his face covered in any way?

16     A.    No.

17     Q.    When you saw this man with the gun, did he say

18   anything to you?

19     A.    I guess he could tell I was nervous because he said,

20   "Calm down, man," and then he just grabbed my stuff and left.

21     Q.    What did he grab specifically?

22     A.    He grabbed my keys and the bank bag.

23     Q.    Did he grab those items from you or were they on the

24   ground?

25     A.    They were on the ground where I threw them.

26     Q.    Did you do that of your own free will or were you

27   instructed to do that?

28     A.    I did that on my own free will.

```
 1          Q.    And why did you do that?

 2          A.    Because he had a gun and I thought I was going to

 3    get hurt.

 4          Q.    After the man grabbed your bag and your keys, what

 5    happened next?

 6          A.    Ran down the street.

 7          Q.    All right.

 8          MR. BOLTAX:  I'm sorry, your Honor?

 9          THE COURT:  He ran down the street.

10          MR. BOLTAX:  I'm sorry.  "He," your Honor, as to who?  Him

11    or the man who picked up the bag?

12          THE COURT:  Who ran down street?

13          THE WITNESS:  The man who picked up the bag.

14          MR. BOLTAX:  Okay.

15    BY MS. GENARO:

16          Q.    Were there any other men around him, the robber,

17    that you saw?

18          A.    No.

19          Q.    And did you follow the robber down the street?

20          A.    No.

21          Q.    Now, do you think you would recognize the robber if

22    you saw him again?

23          A.    No.

24          Q.    Okay.  What did you do next?

25          A.    Well, the bank guard immediately came out the door,

26    almost as if he was watching it.

27          MR. BOLTAX:  Objection, your Honor.  Speculative.

28          THE COURT:  "As if he was watching it," that will be
```

1  stricken.  "Bank guard came out the door" stays.

2  BY MS. GENARO:

3      Q.  What did you see the bank guard do?

4      A.  He just came over and asked me if I was okay.

5      Q.  Okay.

6      A.  At that point, I guess we went back into the bank.

7      Q.  Did you tell him what happened?

8      A.  Uh-huh.

9      THE COURT:  "Yes"?

10      THE WITNESS:  Yes.

11  BY MS. GENARO:

12      Q.  Okay.  Were the police called to the scene?

13      A.  Yes.

14      Q.  And did you then tell them what happened to you?

15      A.  Yes.

16      Q.  Did you have any further contact later that day

17  after you met with that bank guard as far as any of the suspects

18  that may be involved in the case at all?

19      A.  I don't remember if later that day there was a --

20  later -- somebody approached me later.

21      Q.  Can you tell us what happened there.

22      A.  They showed me some pictures.

23      Q.  Photographic lineup?

24      A.  Uh-huh.

25      THE COURT:  "Yes"?

26      THE WITNESS:  Yes.

27  BY MS. GENARO:

28      Q.  Were you able to identify anyone in that lineup?

1     A.   No.

2     Q.   Did you see the person -- robber actually getting

3  away other than you've described you saw him running?

4     A.   I saw him running down the street.

5     Q.   Okay.  Did you see him ever reach any place of

6  safety or car or someone else?

7     A.   No.

8     MS. GENARO:  Thank you.  I have nothing further.

9     THE COURT:  Cross-examination?

10

11                 CROSS-EXAMINATION

12  BY MR. BOLTAX:

13     Q.   Mr. Harp, when -- you said that the black male

14  suddenly appeared in front of you.  Did you see him jump out

15  from behind a van or did he walk out from behind a van?

16     A.   It seemed pretty fast to me, so I would say either

17  jumped or ran.

18     Q.   You didn't see him so you don't know whether he

19  jumped or ran, do you?

20     A.   There was nobody there and then there was suddenly

21  somebody there.

22     Q.   My question is:  Yes or no, did you actually see the

23  person jump or run from behind the van?  Yes or no?

24     A.   No.

25     Q.   Okay.  In terms of this situation happening, when

26  you first saw this black person appear, that person didn't tell

27  you, "Let me have the bag in your hands," did they?

28     A.   No.

1      Q.    They didn't point the gun at you either, did they?

2      A.    No.

3      Q.    In fact, you told the police that the person

4 suddenly appeared and they were just holding the gun, correct?

5      A.    Uh-huh, yes.

6      Q.    Now, he never said, "Give me the money or I'll shoot

7 you," did he?

8      A.    No.

9      Q.    In fact, the only thing that that black male said to

10 you is "Calm down," right?

11      A.    Yes.

12      Q.    And at that point, you had already dropped the money

13 and were starting to back away as if you were going to run; is

14 that right?

15      A.    Yes.

16      Q.    Now, in terms of this bag that you dropped, I just

17 want to get a little clarification.  You said that it was a

18 brown bag, correct?

19      A.    Yes.

20      Q.    Was it a paper bag?  Some type of bag from KFC?

21 What was it exactly?

22      A.    It's a canvas bag.

23      Q.    And any markings on it?

24      A.    No.

25      Q.    So it didn't say "KFC" or "Bank of America" or

26 anything like that?

27      A.    No.

28      Q.    Where were your keys?  Were they in the bag?

1          THE WITNESS:  That's my best estimate.

2    BY MR. BOLTAX:

3          Q.    And weighed about what?  190, 200 pounds?

4          A.    I couldn't tell you.  I'm sorry.

5          Q.    But would you state that they were very skinny or

6    medium build or large?

7          A.    Not large.  Maybe medium.

8          Q.    Medium build?

9          A.    Yeah.

10         Q.    But you wouldn't characterize them as thin or lanky

11   or skinny build, correct?

12         A.    Not skinny, not fat.

13         Q.    Just medium build?

14         A.    Medium, yeah.

15         Q.    You only got a view of the back of the person,

16   correct?

17         A.    Correct.

18         Q.    The only thing that you recall as far as the

19   clothing was the pants, correct?

20         A.    Yes.

21         Q.    You don't recall any of the other clothing?

22         A.    Just that it was a flannel, and I don't remember --

23   all I remember there was red in it, and he had green pants on.

24         Q.    So the red flannel, do you know if it was a pullover

25   or a button-down?

26         A.    It looked like button-up.

27         Q.    But you didn't see the front of it, did you?

28         A.    No.  I was just going by the cuffs on the sleeves.

1                             David Kemerer,

2          called as a witness by and on behalf of the People,

3          having been first duly sworn, testified as follows:

4

5          THE COURT:  Have a seat over here, and we'll try to get

6     you on your way as soon as we can.

7                   State your full name, please.

8          THE WITNESS:  David L. Kemerer.

9          THE COURT:  Spell your last name.

10          THE WITNESS:  K-E-M-E-R-E-R.

11          THE COURT:  All right.

12

13                        DIRECT EXAMINATION

14     BY MS. GENARO:

15          Q.   Back on November 1st of 1996, were you in the area

16     of the Bank of America located at 414 North Magnolia in

17     El Cajon?

18          A.   Yes, I was.

19          Q.   What were you doing in that area?

20          A.   I was going down to a friend's house.

21          Q.   Specifically that morning, did you see something

22     that caught your attention?

23          A.   Yes, I did.

24          Q.   What did you see?

25          A.   It was a man running down the street, the sidewalk,

26     going in the same direction as I was heading.

27          Q.   All right.  And the person that was running down the

28     sidewalk, did he have anything in his hands?

1        A.    He had a white bag in his right hand.

2        Q.    Did you see anything else?

3        A.    No.

4        Q.    That person that you saw running down the street,

5  did you get a look at him?

6        A.    Yes, I did.

7        Q.    Do you see that person in court today?

8        A.    Yes.

9        Q.    Where is he seated and what is he wearing for the

10  record.

11        A.    He's sitting in front of me.

12        THE COURT:  Wearing?

13        THE WITNESS:  Wearing blue coveralls.

14        THE COURT:  Jail outfit.  Identifying John Kendrick.

15  BY MS. GENARO:

16        Q.    Can you tell me, when the defendant ran past you,

17  were you able to see what direction he was running?

18        A.    He was running in the same direction as I was

19  whenever I first saw him.

20        THE COURT:  North?  South?

21        THE WITNESS:  He was running from west to east.

22  BY MS. GENARO:

23        Q.    Did you watch him?

24        A.    I looked over at him, yes.

25        Q.    And did you watch him, then, run ahead of you?

26        A.    He was ahead of me whenever I first seen him, yes.

27        Q.    What happened when -- did see where he went?

28        A.    Yes.

1    Q.    Where did he go?

2    A.    I was driving down the street, got to about the end

3    of the parking lot -- parking area on my right.  There was a red

4    car stopped in front of me, and just as I was starting to go

5    around him, continue on down the street, the driver was leaning

6    over and opening the door.

7    Q.    Which door was the driver opening?

8    A.    The passenger's door.

9    THE COURT:  Was it a two-door or four-door car; do you

10    know?

11    THE WITNESS:  Two-door.

12    THE COURT:  So it was the right side door that was opened?

13    THE WITNESS:  Right was being opened.

14    THE COURT:  Right.

15    BY MS. GENARO:

16    Q.    What kind of car was this that was in front of you?

17    A.    A red Toyota.

18    Q.    Did you later give a portion of that license plate

19    number to the police?

20    A.    Yes.

21    Q.    Now, when you saw that right-hand side passenger

22    door opened, what happened next?

23    A.    I went ahead and pulled around the red car, and in

24    my mind, somebody running down the street --

25    MR. BOLTAX:  Objection, your Honor.  Nonresponsive.

26    THE COURT:  So you started to pull around the car, right?

27    THE WITNESS:  I pulled around the car and stopped.

28    ///

1    BY MS. GENARO:

2         Q.    What did you do when you stopped?

3         A.    I sat there, and I was thinking, "Something's not

4    right," and I was looking in my review mirror.

5         Q.    Were you watching this man that was running?

6         A.    Yes.

7         Q.    Where did that man go or the defendant you

8    identified as him?

9         A.    He got in the right-hand passenger side of the red

10   Toyota.

11        Q.    When you saw him get in that Toyota, what did you do

12   next?

13        A.    I just stopped.

14        Q.    Okay.  Did you see what happened to the Toyota with

15   the defendant inside?

16        A.    Yeah.  It drove around me and on down Wisconsin.

17        Q.    What did you do?

18        A.    I got -- I was looking at the license plate number

19   whenever the car pulled around me, and I got a partial on the

20   license plate, and I just stayed right there, and I watched the

21   car until it got down to the end of the street and turned left.

22        Q.    All right.  Were you able to see who else was inside

23   that red Toyota?

24        A.    There was another man.  I couldn't identify him.

25        Q.    Were you able to tell what nationality that man was?

26        A.    Yes.

27        Q.    What would that be?

28        A.    He was a Negro.

1      Q.    And was he the driver?

2      A.    Yes.

3      Q.    Now, when you saw that car get down to the end of

4 the street, did you stay there?

5      A.    No.

6      Q.    What did you do?

7      A.    I drive down to the end of the street and started to

8 follow him.

9      Q.    All right. And how long did you follow that Celica?

10     A.    Well, I got down to the end of the street. They

11 turned left. As soon as they turned left and were out of sight,

12 I drove down the end of the street and turned left. As I pulled

13 onto -- I'm not very good on street names. They got up -- I

14 noticed the red car ahead of me stopped, and it turned left

15 again on East Main.

16     Q.    And did you follow it at that point?

17     A.    Whenever it turned left again, I turned left again.

18     Q.    What happened after it made a left-hand turn on East

19 Main?

20     A.    I turned left and went up by the grocery store and

21 turned right, continued on up towards Main. As I was getting up

22 to the intersection again, I noticed the red Toyota turning

23 right and proceeded south.

24     Q.    Did you follow it there?

25     A.    No. That's where I lost it. I was stopped at the

26 red light.

27     Q.    After you lost that red Toyota, what did you do?

28     A.    I went ahead and turned around and went back down to

1    my friend's apartment on Wisconsin.

2         Q.    And did you then -- what did you do when you got

3    there?

4         A.    I called the police department.

5         Q.    Did you then report to the police what you had seen?

6         A.    Yes.

7         Q.    Did you report that partial license plate number to

8    them at that time?

9         A.    Yes.

10        MS. GENARO:   Nothing further.

11        THE COURT:   Cross-examination.

12

13                        CROSS-EXAMINATION

14   BY MR. BOLTAX:

15        Q.    Mr. Kemerer, you said the first time you saw the

16   individual, they were going in the same direction that you were

17   heading; is that correct?

18        A.    Yes.

19        Q.    Now, this Negro individual that you testified -- the

20   individual was Negro; was that correct?

21        A.    Yes.

22        Q.    Now, this Negro individual that you stated that you

23   saw, when you first saw this person, you were in your vehicle;

24   is that correct?

25        A.    Yes.

26        Q.    And you were in the driver's side of your vehicle;

27   is that correct?

28        A.    Yes.

1       Q.    When you first saw this Negro individual, was this

2  Negro individual behind you or in front of you?

3       A.    Slightly ahead of me.

4       Q.    So the view you got of this Negro individual was

5  partially the back of the head and partially a profile of the

6  side of the face?

7       A.    At first, yes.

8       Q.    Okay.  And the only thing unusual that this Negro

9  individual was doing was running down the street, right?

10      A.    He was running down the street.  I noticed he had a

11  white bag in his hand, and he turned and looked at me twice, and

12  he looked back towards the bank a couple times over his right

13  shoulder.

14      Q.    Now, you're sure the car was a Celica?

15      A.    Yes.

16      Q.    You told the police it was a hatchback, didn't you?

17      A.    No.

18      Q.    You sure you didn't tell the police it was a newer

19  model, two-door, hatchback-type vehicle?

20      A.    No.  I told them it was a red Toyota.

21      Q.    You're sure about that?

22      A.    Yes.

23      Q.    The police would have no reason to lie about your

24  statement, would they?

25      A.    No.

26      Q.    So if the police indicated that you told them that

27  it was a bright red, two-door, newer, foreign model,

28  hatchback-type vehicle, wouldn't that be what you told the

```
1     police, sir?

2          A.    I believe I told them it was a Toyota.

3          Q.    Didn't somebody subsequently tell you that it was a

4     bright red Toyota -- one of the officers when you gave them the

5     partial plate, did they tell you that's what the car was?

6          A.    No.

7          Q.    In terms of the circumstances of you first getting

8     the view of this Negro individual, were they on the sidewalk of

9     the street you were hiding down?

10         A.    Yes.

11         Q.    You were in the lane closest -- was it a one-lane or

12    two-lane street you were heading down?

13         A.    Two.

14         Q.    Two lanes heading in the same direction you were

15    going?

16         A.    Uh-huh.

17         Q.    Is that correct?

18         A.    Yes.

19         Q.    And in terms of that two lanes, you were heading

20    westbound?

21         A.    Yes.

22         Q.    And the individual was slightly ahead of you heading

23    westbound?

24         A.    Yes.

25         Q.    Were you in the lane closest from the sidewalk or

26    farthest from the sidewalk?

27         A.    It was only two lanes.  I was in the one closest to

28    the sidewalk.
```

1        Q.    Okay.  Now, at some point in time, you pulled ahead

2   of this red car; is that correct?

3        A.    Yes.

4        Q.    And you got a view of this Negro individual through

5   the rear view mirror?

6        A.    The driver.

7        Q.    You got a view of the Negro individual you saw in

8   the street?  Did you see their front face through your rear view

9   mirror?

10       A.    Yes.

11       Q.    Did you see the driver's face?

12       A.    Yes.

13       Q.    And you could see the driver's face through your

14   rear view mirror, correct?

15       A.    Yes.

16       Q.    But you can't give us any identification of what the

17   driver of the car looked like other than he was also a Negro; is

18   that correct?

19       A.    And I believe I stated -- I believed he had facial

20   hair.

21       Q.    You believe, but you're not sure?

22       A.    That's what I told the police.

23       Q.    You're not sure if he had facial hair.  You believe

24   it, but you're not certain; is that correct?

25       A.    Right.

26       Q.    Because it's kind of difficult to see somebody

27   through your rear view mirror, correct?

28       A.    True.

1    Q.    And the view you got of the person with the white

2    bag, that was through your rear view mirror also, correct?

3    A.    No.  He turned around and looked at me twice while

4    he was running down the street.  He turned and looked over his

5    left shoulder and looked right at me.

6    Q.    How tall was this person?

7    A.    Six foot.

8    Q.    In fact, they were about six-foot-one or

9    six-foot-two; isn't that correct?

10   A.    I couldn't tell.  He wasn't standing in a stopped

11   manner.  He was running, which would make him shorter.

12   Q.    So your estimation of six feet was based on how he

13   looked while he was running; is that correct?

14   A.    Uh-huh.

15   Q.    So he is probably taller than six feet, correct?

16   A.    Could have been.

17   Q.    Now, in terms of the individual who you saw -- this

18   Negro individual you saw running with the bag, what hand was the

19   bag in, the right hand or the left hand?

20   A.    Right hand.

21   Q.    And it was a white bag; is that correct?

22   A.    Yes.

23   Q.    What did the Negro individual have in his left hand?

24   A.    I didn't notice anything.

25   Q.    Now, as you saw this individual, you were driving;

26   were you not?

27   A.    Yes.

28   Q.    So you also had to watch the road as you watched

1    this individual, correct?

2        A.    Right.

3        Q.    Now, you indicated at one point in time you had

4    pulled ahead of this red Toyota and were looking through your

5    rear view mirror, correct?

6        A.    Yes.

7        Q.    How long were you looking through your rear view

8    mirror?

9        A.    Just less than a minute.

10       Q.    Now, this black individual or this person you

11   described as a Negro individual who you saw with the bag, what

12   kind of hair did they have?

13       A.    Short.

14       Q.    Shorter than the defendant sitting to my right?

15       A.    I can't tell sitting right here how long it is.

16       Q.    Why is that, sir?

17       A.    The dense, curliness.

18       Q.    So you're sitting probably within six or seven feet

19   of my client, correct?

20       A.    Correct.

21       Q.    And you can't tell how short his hair is, correct?

22       A.    I would guess --

23       Q.    I'm not asking you to guess.  Yes or no.

24       A.    I would say three-eighths of an inch.

25       Q.    Sir, that's not what I asked you.  Did you

26   previously testify that, even though you're sitting here right

27   next to my client, that you can't tell how long his hair is?

28   Was that your previous statement under oath?

BY MR. BOLTAX:

    Q.    It was a solid color, light or medium gray shirt, correct?

    A.    Yeah.

    Q.    What about the shoes?

    A.    Couldn't see the shoes.

    Q.    The driver was, you indicated, Negro also, correct?

    A.    Yes.

    Q.    Sir, do you wear glasses?

    A.    No.

    Q.    Do you know what your vision is now without glasses on?

    A.    No.

    Q.    Do you have any trouble seeing?

    A.    No.

    Q.    Did you see any keys in the individual's hands?

    A.    No.

    Q.    Did you see the individual put any keys in their pocket?

    A.    No.

    Q.    You indicated that at some point you started following this particular car; is that correct?

    A.    Yes.

    Q.    And it appears that you followed it for several blocks; is that correct?

    A.    Yes.

    Q.    And you got pretty close to that vehicle when you were following?

1    of shirt he was wearing?

2         A.    It was like a Pendleton, flannel.

3         Q.    Do you know what color it was?

4         A.    It was, like, green, red and black or something like

5    that.  To be honest, I can't remember now.

6         Q.    Do you think you would recognize that person that

7    ran by you and got into that red Toyota if you saw him again?

8         A.    The only thing I saw was a brief profile, so I would

9    not.  I'd honestly say no.

10        MS. GENARO:  Okay.  Thank you very much.  I have nothing

11   further.

12        THE COURT:  Cross-examination?

13

14                        CROSS-EXAMINATION

15   BY MR. BOLTAX:

16        Q.    I just want to see if I can get this thing.  You

17   said this weird thing happened with these two cars.  Follow me

18   and tell me if I'm telling you correctly.  If not, correct me

19   where I'm wrong.

20              The first thing that catches your attention is you

21   hear some keys drop on the floor, correct?

22        A.    That's not correct.

23        Q.    The first thing that catches your attention was

24   somebody coming by you?

25        A.    Heavy footsteps at a quick rate.

26        Q.    And then you look up and you see that a gentleman

27   has passed by you?

28        A.    He's coming, approaching.

K20

# PROOF OF SERVICE

(C.C.P. §2015.5;  28 U.S.C. §1745)

I, _John F. Kendrick, II_, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action.  My address is:

_K·V·S·P_
_B-3, Cell #112_
_P.O. Box 5102_
_Delano, Ca. 93216_

On, _March, 11TH_ , _2008_ , I served the following documents: _Petition For Writ Of Habeas Corpus (X2) And Exhibits "A" & "B"_ _____ on the below named individuals by depositing true and correct copies thereof in the United State mail in _____ , California, with postage fully prepaid thereon, addressed as follows:

1. _United States District Court. Southern District Of California._
   _880 Front St. Suite 4290_
   _San Deego, Ca. 92101-8900_

2. _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this ___11TH___ day of _March_ , _2008_ , at California State Prison at _____ , _____ , California.

(Signature) _____ II
                              Declarant

27

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

2254      1983

FILING FEE PAID
Yes        No ✓

IFP MOTION FILED
Yes        No

COPIES SENT TO

Court____ ____ Print

**FILED**
MAR 1 7 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## I (a) PLAINTIFFS

**John Findley Kendrick II**

(b) COUNTY OF RESIDENCE OF FIRST LISTED   **Kern**
PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**Hedgepeth, et al**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**John Findley Kendrick II**
**PO Box 5102**
**Delano, CA 93216**
**K-58737**

ATTORNEYS (IF KNOWN)

**'08 CV 0492 BTM NLS**

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
(For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28 U.S.C. 2254

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):   JUDGE

Docket Number

DATE   3/17/2008

SIGNATURE OF ATTORNEY OF RECORD

*[signature]*

*CR*